IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,964






EX PARTE SPENCER OJEIFO IMOUDU, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM BEXAR COUNTY






 Meyers, J., delivered the opinion of the Court in which Price, Womack,
Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J.,
filed a dissenting opinion.


O P I N I O N



 Applicant was charged with felony murder and manslaughter. He pled guilty to
murder in exchange for a 17-year sentence with an affirmative finding of a deadly
weapon. Applicant filed an application for writ of habeas corpus claiming that his plea
was involuntary because his trial counsel failed to investigate and advise him of the
availability of an insanity defense. The trial court entered findings of fact and
conclusions of law recommending that relief be denied. We filed and set this application
for writ of habeas corpus to consider whether counsel was ineffective for failing to
investigate whether Applicant was insane at the time of the offense. We hold that
Applicant was prejudiced by counsel's error. Relief is granted.

FACTS

 In August of 2005, Applicant stole a car from outside a pawn shop. The owner of
the car was inside the pawn shop at the time, and he and another witness got into the
witness's truck and pursued Applicant. During the chase, Applicant drove into oncoming
traffic and hit another car, killing the driver. Applicant was arrested and charged with
felony murder and manslaughter. Applicant was initially represented by court-appointed
counsel. 

 When Applicant's father visited the jail, he found that Applicant was not himself. 
A social worker who worked with the mentally ill patients in the detention center
informed Mr. Imoudu that she had noticed Applicant's deteriorating mental health. The
social worker attempted to contact Applicant's court-appointed attorney, but he had not
returned any of her calls. She suggested to Mr. Imoudu that he hire another attorney to
represent his son. Acting on her suggestion, in March of 2006, Applicant's family
retained counsel to represent him, and his court-appointed attorney was dismissed. When
the newly hired attorney first met with him, Applicant "stared into space, struck an odd
pose with his fingers on his chin, mumbled, and was incoherent." Co-counsel met with
Applicant and also felt that there was "something wrong" with him. As a result of their
separate meetings with Applicant, the attorneys filed a motion for a competency
examination. The court-appointed psychiatrist evaluated Applicant and concluded that he
was competent. Applicant testified at the competency hearing and was coherent, alert,
and aware of the proceedings. (1) After Applicant's testimony at the hearing, his attorney
conceded that Applicant was competent to stand trial. A month later, Applicant accepted
the State's plea agreement and pled guilty to murder in exchange for a 17-year sentence.

HABEAS

 Applicant filed this application for writ of habeas corpus claiming that his guilty
plea was involuntary as a result of counsel's failure to investigate whether he was insane
at the time of the offense and failure to inform him of the availability of an insanity
defense. A psychiatrist who was hired by habeas counsel to review Applicant's medical
records concluded that Applicant had a chronic mental illness, probably schizophrenia,
and was likely insane at the time of the offense. Habeas counsel argues that if
Applicant's trial attorneys had obtained the medical records and hired a psychiatrist to
review them, there is a reasonable probability that he or she also would have determined
that Applicant was insane at the time of the offense. And, if Applicant and his family had
known of the possibility of an insanity defense, then Applicant would have rejected the
plea offer and gone to trial. 

 While there is nothing indicating that Applicant ever received mental-health
treatment when he was not in jail, the medical records from the jail are extensive. The
records indicate that Applicant had received mental-health treatment within the six
months prior to this offense, when he was arrested in January of 2005 for misdemeanor
theft. While in jail for the misdemeanor, Applicant was prescribed the anti-psychotic
medication Stelazine, which is often used to treat schizophrenia. That case was
dismissed, and he was released after over a month in jail. Six months later, Applicant
was arrested for the current offense. The medical records dated after this arrest show
numerous referrals to the mental-health services of the jail and several requests for
psychiatric evaluations, which eventually resulted in Applicant being moved to the area of
the jail used to house the mentally ill inmates. While there, he was determined to be
"significant for mental illness" and prescribed the medications Haldol and Depakote for a
possible diagnosis of schizophrenia.

 Applicant's attorneys did not request these records from the jail. Their only
consideration of Applicant's mental health was to review the report of the psychiatrist
who evaluated his competency to stand trial. 

 After reviewing the application for writ of habeas corpus, the trial court entered 36
pages of findings of fact and conclusions of law and recommended that the application be
denied. (2) The trial court was "not convinced that the failure to further investigate and
pursue the insanity defense, the failure to hire another psychiatrist to evaluate Applicant,
and the failure to advise Applicant to reject the plea bargain, go to trial, and plead insanity
as a defense, was representation that fell below an objective standard of reasonableness." (3) 

 CASELAW

 In order to prevail on a claim of ineffective assistance of counsel, Applicant must
satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed.
2d 674, 104 S. Ct. 2052 (1984). First, he must show that counsel's performance was
deficient. However, there is "a strong presumption that counsel's conduct falls within the
wide range of reasonable professional assistance." Id. at 689. Second, Applicant must
show that he was prejudiced by counsel's deficient performance. To demonstrate
prejudice, Applicant "must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different." 
Id. at 694. In Hill v. Lockhart, the Supreme Court held that the Strickland test applies to
challenges to guilty pleas based on ineffective assistance of counsel. 474 U.S. 52, 58, 106
S.Ct. 366 (1985). In the context of a guilty plea, a defendant satisfies the prejudice
requirement by showing that he would not have pleaded guilty and would have insisted on
going to trial. Id. at 59. The Court noted that "where the alleged error of counsel is a
failure to advise the defendant of a potential affirmative defense to the crime charged, the
resolution of the 'prejudice' inquiry will depend largely on whether the affirmative
defense likely would have succeeded at trial." Id.

ANALYSIS


 In his affidavit, one of Applicant's attorneys stated that he received a letter from
Applicant: "Much of it was gibberish. However, he wrote that he was 'attending
programs for illness' and taking various prescription medications." This led the attorneys
to request a competency examination, but they never investigated whether he was insane
at the time of the offense, did not review his jail medical records or speak to any of the
jail personnel who had contact with him after his arrest, did not request an insanity
evaluation or hire a psychiatrist to evaluate Applicant's mental condition at the time of
the offense, and did not advise him of the insanity defense.

 Given Applicant's odd behavior when the attorneys met him, the concerns
expressed to the attorneys by his family, and the fact that the attorneys were retained on
the advice of the social worker who had observed Applicant's decline in mental-health, 
Applicant's attorneys should have been alerted that his mental health at the time of the
offense may have been in question and thus, they should have looked into past medical
records from the jail. Applicant's other attorney filed an affidavit stating, "I explained the
[plea] offer to [Applicant] and his family and recommended that he accept it due to my
concerns about how [Applicant] would act and what he might say during the punishment
hearing in any attempt at mitigation." If the attorney was so concerned about Applicant's
bizarre behavior that he recommended that Applicant accept the State's plea offer, he
should have considered that the bizarre behavior could indicate that Applicant may have
been insane at the time of the offense-at least enough to have looked into it. See
Strickland, 466 U.S. at 691 (counsel has a duty to make reasonable investigations or to
make a reasonable decision that makes particular investigations unnecessary).

 Thus, we feel that counsel had a duty to investigate the possibility that Applicant
was insane at the time of the offense given the likelihood of mental illness noted in
reports from jail medical personnel. Instead, counsel failed to even obtain Applicant's
medical records. If they had, it would have been clear from even a cursory reading of the
documents that Applicant was suffering from some mental problems while he was
incarcerated. This leads us to conclude that counsel was ineffective for failing to
investigate whether Applicant was insane at the time of the offense. 

 We next turn to whether Applicant was prejudiced by counsel's error. Applicant
claims that, but for counsel's errors, he would not have pled guilty and instead would
have gone to trial and pled not guilty by reason of insanity. In his affidavit, Applicant
states: "The lawyers did not discuss an insanity defense with me. Had they hired a
psychiatrist to evaluate me, the psychiatrist concluded that I was insane at the time of the
offense, and the lawyers explained the insanity defense to me, I would have rejected the
plea bargain, pled not guilty by reason of insanity, and gone to trial." Applicant's father
also filed an affidavit claiming that "[t]he lawyers did not advise me of the insanity
defense or request funds to hire a psychiatrist to determine whether [Applicant] was
insane at the time of the offense. I would have provided funds upon request. Had a
psychiatrist concluded that [Applicant] was insane at the time of the offense, and the
lawyers advised me of the insanity defense, I would have encouraged [Applicant] to plead
not guilty by reason of insanity and go to trial." Thus, Applicant has shown a reasonable
probability that counsel's ineffective assistance affected the outcome of the plea process. 

 Under Hill, part of this analysis necessarily includes a consideration of whether the
insanity defense would have been validly raised and likely to succeed at trial. 474 U.S. at
59. In this case, the psychiatrist hired by habeas counsel reviewed Applicant's medical
records and determined that Applicant was actively schizophrenic at the time of the
offense and that the nature of the schizophrenic process includes the inability at any given
moment to discern right from wrong. He stated in his affidavit: 

 Given the likelihood that [Applicant] was psychotic and paranoid when he
stole the car, his psychosis and paranoia probably were exacerbated during
the chase, causing him to believe that someone was trying to kill him. 
Therefore, it is my opinion, based on reasonable medical probability, that
[Applicant] was suffering from untreated schizophrenia, was unable to
discern right from wrong, and was insane at the time of the offense on
August 1, 2005. 

Had Applicant gone to trial, such testimony by a psychiatrist may have raised a
reasonable doubt in the mind of the trier of fact. (4) This satisfies Strickland's prejudice
requirement. 466 U.S. at 695. 

CONCLUSION

 We conclude that counsel erred in failing to investigate Applicant's sanity at the
time of the offense. Additionally, Applicant has shown that there is a reasonable
probability that if his attorneys had informed him of the possibility of pursuing an insanity
defense, he would not have pled guilty and would have gone to trial. Therefore,
Applicant was prejudiced by counsel's error and he is entitled to relief.


 Meyers, J.


Delivered: June 3, 2009

Publish

1. At the time of the hearing, Applicant had already been prescribed anti-psychotic
medications.
2. While the findings of fact and conclusions of law are indeed quite thorough, some of
them indicate a misreading of the record. Specifically, the trial court concluded, in both the
findings of fact and the conclusions of law, that schizophrenia was ruled out as a diagnosis due to
the notation "R/O Schizophrenia" in Applicant's medical records from the jail. However, "R/O"
is the medical abbreviation for "rule out." Thus, "R/O schizophrenia" actually means that the
observer suspects that the patient may have schizophrenia and the patient should be evaluated in
order to rule out the diagnosis. 
3. We note that the cases cited by the trial court in support of the conclusion that counsel
were not ineffective for failing to obtain an examination of Applicant or to further investigate an
insanity defense were cases in which the attorneys at least investigated the defendant's medical
history and made an educated decision to not pursue an insanity defense. 
4. We are not called upon here to decide if Applicant actually was insane at the time of the
offense. Our concern is simply that, due to counsel's failure to investigate Applicant's medical
history, Applicant was not able to make an educated decision regarding whether to proceed to
trial and raise an insanity defense. We acknowledge that the 17-year sentence Applicant received
was favorable in light of the fact that he was charged with murder, for which he could have been
sentenced to 5 to 99 years or life, and with manslaughter, for which he could have received 2 to
20 years. However, a lenient sentence does not indicate a lack of prejudice.